IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

JAN - 4 2012

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Samuel Harris,               )
        Petitioner,          )
                             )
v.                           )        1:10cv1337 (JCC/TRJ)
                             )
Patricia Stansberry, et al., )
        Respondents.         )

MEMORANDUM OPINION

Samuel Harris, a federal inmate proceeding pro se, has filed a petition for a writ of habeas

corpus, pursuant to 28 U.S.C. § 2241, challenging the validity of a decision made by the United

States Parole Commission ("USPC") at petitioner's parole revocation hearing.[1]   On June 28,

2011, respondents filed a Motion to Dismiss for lack of subject-matter jurisdiction or in the

alternative a Motion for Summary Judgment, along with a supporting memorandum and exhibits.

Respondents gave petitioner notice and an opportunity to file responsive materials, as required by

Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and petitioner filed a response on July 21,

2011.   Therefore, this matter is ripe for disposition.   For the reasons that follow, petitioner's

claims must be dismissed and respondents' Motion for Summary Judgment must be granted.

---

[1] When this petition was originally filed the petitioner was incarcerated in FCI Petersburg
Medium, which is located in the Eastern District of Virginia.   Petitioner was subsequently
transferred to FCI Beaumont in Beaumont, Texas and this Court transferred the case to the
Eastern District of Texas, Beaumont Division in an Order dated February 7, 2011.   On March
17, 2011, the Eastern District of Texas transferred the case back to this Court, explaining that the
only district that may consider a § 2241 petition is the district in which the petitioner was
confined at the time he filed the petition.   See Lee v. Wetzel, 244 F.3d 370, 375 n.5 (5th Cir.
2001).

## I. Background

On November 17, 1994, the Superior Court of the District of Columbia sentenced petitioner to fifteen years in prison for possession of a firearm during a crime of violence or dangerous offense and two years probation for armed robbery.   See Resp't Mem. Ex. A; ECF No. 14.   On May 26, 1999, petitioner was released on parole with a sentence expiration date of May 26, 2009.   See id. at Ex. B; ECF No. 14.

While on parole, petitioner committed another armed robbery for which he was arrested. On May 1, 2000, he was sentenced by the Superior Court of the District of Columbia to fifteen years in prison, with all but eighteen months suspended.   See id. at Ex. C; ECF No. 14. Additionally, petitioner's 1994 probation was revoked and petitioner was sentenced to two to six years in prison for violation of parole.   See id. Ex. D; ECF No. 14.

The United States Parole Commission held a hearing to consider petitioner for parole on the probation violation and to determine a disposition for the parole violator warrant issued for petitioner's violation of parole on the original fifteen year sentence.   The Parole Commission granted petitioner parole on the two to six year sentence for his probation violation.   See id. at Ex. E.; ECF. No. 14.   However, the Commission revoked petitioner's parole on the original fifteen year sentence imposed in 1994, denied him credit for any of the time spent on parole while serving the original sentence, as is required by D.C. Code § 24-406(c), and ordered the remaining balance of the original sentence to commence upon petitioner's release pursuant to his new sentence for his probation violation.   Id.   On November 4, 2003, petitioner was released on

parole on the new probation violation sentence and was granted reparole[2] on the original fifteen year sentence imposed in 1994.   See id. at Ex. F; ECF No. 14.

After release, petitioner was arrested and charged with four additional robberies and the Parole Commission issued a parole violator warrant for petitioner on April 29, 2005.   See id. at Ex. G; ECF No. 14.   Subsequently, the Superior Court of the District of Columbia convicted petitioner of armed robbery and sentenced him to 72 months in prison and three years supervised release.   See id. at Ex. H; ECF No. 14.   On March 22, 2010, petitioner completed this sentence and the Bureau of Prisons executed the Commission's parole violator warrant that was obtained on April 29, 2005.   See id. at Ex. G at 7; ECF No. 14.

Petitioner's parole revocation hearing was held on May 7, 2010.   At the hearing, a Parole Commission hearing examiner determined that the reparole guidelines required petitioner to serve 48 to 60 months before release.   See Ex. I at 3; ECF No. 14.   This guideline calculation was based upon an offense severity rating of five for robbery and petitioner's salient factor score of five.   Id. at 3.   An executive reviewer reviewed the hearing examiners' finding and determined that the four robberies could be considered "multiple separate offenses" as defined in the Parole Commission's rules.[3]   This increased the offense severity level from five to six and the reparole guidelines to 64 to 78 months to be served before release.   See id. at Ex. I at 4; ECF No. 14.   The executive reviewer noted petitioner's positive programming, but recommended a reparole date above the guidelines because of his history of committing robberies.   Id.

---

[2] "Reparole" indicates a parole term that follows a period of incarceration imposed after an earlier grant of parole was revoked.

[3] The notes accompanying the United States Parole Commission Behavior Severity Index states "the term 'multiple separate offenses' generally refers to offenses committed at different

On July 7, 2010, the Commission issued its decision to revoke petitioner's parole, forfeit all of time spent on parole, and grant reparole after service of 120 months. See id. at Ex. J; ECF No. 14. The decision exceeded the reparole guidelines and the Commission stated the following reasons for its decision:

> After review of all relevant factors and information, a decision above the guidelines is warranted because you are a more serious risk than indicated by the guidelines in that based on your history of committing robbery while under community supervision. Specifically, you were convicted of Armed Robbery and Possessing a Firearm During a Crime of Violence in relation to a 5/27/94 robbery of a convenience store. You were released to probation and parole supervision on 5/26/99. However you then committed the robbery of a Rite-Aid Pharmacy on 12/27/99. You were convicted, received a new sentence and also had your probation and parole revoked as a result of this new activity. You were then released on parole again on 11/4/2003. This time on parole, you committed four bank robberies within 14 months of your release. You have continued to commit robberies while on parole supervision and the Commission believes that you are a high risk to resume the criminal behavior when you are released again to the community.

See id. at 2. Petitioner was also advised that he would receive a review hearing in May 2012. Id.

Petitioner administratively appealed the Commission's decision to the National Appeals Board ("NAB"), which affirmed the Commission's decision on September 13, 2010. See id. at Ex. K; ECF No. 14. The petitioner argued that the Commission based its decision on erroneous

---

times." See Notes Accompanying 28 C.F.R. 2.20 at Chp. 13 Subchp A(2)(b).

information because it referred to petitioner's robbery convictions as "bank" robbery convictions. Although the NAB acknowledged that the Commission erred by referring to the robberies as "bank" robberies, the NAB held the error irrelevant to the Commission's decision because the regulations do not distinguish between bank robberies and other types of robbery and the Commission's finding that the petitioner had a repetitive history of committing robberies, including four within fourteen months, was correct.   Id.

Petitioner filed the instant § 2241 habeas petition on October 19, 2010, raising the following claims:

(1) The United States Parole Commission violated Due Process by

   (A) Failing to give proper weight to his record of institutional accomplishments

   (B) Erring in stating that he had committed bank robberies

   (C) Engaging in double counting

   (D) Not awarding the petitioner his full allotted total statutory good time of 1800 days.

(2) The reasons provided by the Parole Commission violated its regulations

(3) The Parole Commission violated the Ex Post Facto Clause because its application of the Commission's reparole guidelines will cause petitioner to serve more time in prison than he would have served if the guidelines used by the D.C. Board of Parole at the time petitioner committed his offense were applied. Specifically, petitioner argues

   (A) The Commission violated the Ex Post Facto Clause when it applied the 2000 Guidelines instead of the 1987 D.C. Board of Parole Guidelines at petitioner's parole revocation hearing.

(B) The Commission violated the <u>Ex</u> <u>Post</u> <u>Facto</u> Clause
when it waited until the conclusion of petitioner's
intervening sentence to execute a parole violator
warrant.

(C) The Commission violated the <u>Ex</u> <u>Post</u> <u>Facto</u> Clause
when it examined his post-incarceration behavior under
the 2000 Guidelines, which focuses on punitive factors,
rather than the 1987 D.C. regulations, which look more
to rehabilitative factors.

## II. Standard of Review

As noted, respondents filed a Motion to Dismiss pursuant to Federal Rule of Civil

Procedure 12(b)(1) for lack of subject-matter jurisdiction or alternatively a Motion for Summary

Judgment pursuant to Federal Rule of Civil Procedure 56.   Because the respondents did not file

a brief supporting an argument for a lack of subject-matter jurisdiction, the Court will dismiss

respondents' Motion to Dismiss.   The Court will proceed on respondents' Motion for Summary

Judgment.

In reviewing the Motion for Summary Judgment, courts must view the facts in the light

most favorable to the party opposing the motion.   <u>Porter v. U.S. Alumoweld Co.</u>, 125 F.3d 243,

245 (4th Cir. 1997).   Summary judgment is appropriate where "there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P.

56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).   A "genuine" issue of material fact is

present "if the evidence is such that a reasonable jury could . . . return a verdict for the

non-moving party."   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).   "When a

motion for summary judgment is made and supported . . . [by affidavits], an adverse party may

not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse

6

party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).   Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment.   Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).


### III. Merits

A. Claim 1: Denial of Due Process

 As a threshold matter, judicial review of parole decisions is extremely limited.   This Circuit has held that "the Parole Act specifically commits the decision to grant or deny parole to the unreviewable discretion of the Parole Commission."   Garcia v. Neagele, 660 F.2d 983, 988 (4th Cir. 1981).   Therefore, the Commission's parole determination is only   reviewable if the Commission "exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations" when reaching its determination.   Id.; see also Fardella v. Garrison, 698 F.2d 208, 210 (4th Cir. 1982); Smith v. Hambrick, 637 F.2d 211, 212 (4th Cir. 1980).

 1) Claim 1(A): Failure to Give Weight to Petitioner's Record of Institutional Accomplishments

 In his first claim, petitioner alleges that the Commission acted unconstitutionally during his parole revocation hearing because it failed to take into account his favorable post-incarceration behavior while at the same time deciding to exceed the parole guidelines.   See Pet's Resp. at 2; ECF No. 17.   Specifically, petitioner asserts the Commission's decision

7

deprived him of a fair review, thereby violating due process.   Id. At 2-4.

Petitioner's argument is without merit.   The record unambiguously indicates that the petitioner's favorable post-incarceration behavior was taken into account by the executive reviewer, whose recommendations were eventually adopted by the Commissioner.   The executive reviewer clearly stated: "[w]hile his positive programming is noted, his history of committing robberies indicates to me that he is a more serious risk."   Resp't Mem. at Ex. I at 5; ECF No 14.   The fact that unfavorable factors outweighed the petitioner's favorable post-incarceration behavior, does not establish, as petitioner suggests, that the Commission wholly disregarded his favorable post-incarceration behavior.   See, e.g., Walker v. United States, 816 F.2d 1313, 1317 (9th Cir. 1987)   ("Although good institutional behavior is a factor, its existence does not necessarily outweigh adverse factors."); Bogan v. D.C. Board of Parole, 749 A.2d 127, 129 (D.C. 2000) (upholding the D.C. Board's denial of parole even though the inmate had completed all of the required prison programs).

Furthermore, the Commission has unreviewable discretion to depart from the guidelines when "unusual circumstances" are present.   Page v. Pearson, 261 F. Supp. 2d 528, 532 (E.D. Va. 2003).   Unusual circumstances include "case-specific factors that are not fully taken into account in the guidelines, and that are relevant to the grant or denial of parole.   Id.   (citing 28 C.F.R. 2.80(n)(1).   If the Commission departs from the guidelines, it "shall specify in the notice of action the specific factors that it relied on in departing from the applicable guideline or guideline range."   Id.

In this case, the Commission found that petitioner's continued propensity to commit robberies while on parole supervision constituted "unusual circumstances" that justified

departure from the guidelines.   See Resp't Mem. at Ex. J; ECF No. 14.   Additionally, contrary

to petitioner's assertions, the Commission did state with specificity its reasons for departing from

the guidelines as required by   28 C.F.R. § 2.80(n)(1).   The Commission informed petition it

departed from the guidelines because he was "a more serious risk than indicated by the

guidelines in that based on your history of committing robbery while under community

supervision."   See id.   The Commission listed each robbery offense petitioner was convicted of

while on parole between 1994 and 1999.   The Commission also noted that petitioner committed

four robberies within fourteen months after he was released on parole in 2003.   Id.   Lastly, the

Commission explained it believed that the petitioner was a "high risk to resume this criminal

behavior when you are released again to the community."

The record establishes that the Commission took petitioner's positive post-incarceration

achievements into account, but ultimately determined that unfavorable factors outweighed his

positive programming.   Therefore, petitioner's claim that the Commission violated due process

by not giving proper weigh to his favorable post-incarceration behavior must be dismissed.

2) Claim 1(B)   Reliance on Erroneous Information for Reparole Determination

In his next claim, petitioner asserts that the Commission violated due process by relying

on erroneous information when making its reparole decision.   See Pet's Resp. 6-10; ECF No. 17.

Specifically, petitioner is referring to the Notice of Action issued by the Commission in which

the Commission refers to petitioner's previous robbery convictions as "bank" robbery

convictions.   See Resp't Mem. at Ex. 2; ECF No. 14.; Pet's Resp. at 6-10; ECF No. 17.

Petitioner alleges reliance on this erroneous information violated numerous Commission

procedures and deprived petitioner of "fair process and procedures."   Pet's Resp. at 6.

9

"Before a court may grant habeas relief for a procedural violation of the Commission's regulations, the inmate must first establish that the alleged violation resulted in prejudice." Jackson v. Compton, 2003 WL 24146652, at * 5 (W.D. Va. Dec. 30, 2003) (unpublished decision) (citing Borre v. Garrison, 536 F. Supp. 76 (E.D. Va. 1982)); see also Martineau v. Perrin, 601 F.2d 1201, 1205 (1st Cir. 1979) (concluding that non-prejudicial variances in parole revocation proceedings are not enough to establish a violation of due process).   In this case, petitioner suffered no prejudice as evidenced by the National Appeal Board's response when petitioner raised the exact same claim in an appeal from the Commission's decision.   The National Appeals Board explained:

> The specific mitigating circumstances you propose as a reason for a more lenient decision have been considered but are not seen as a reason for reduction in the decision in your case.
>
> In response to your claim that the decision was based on erroneous information the evidence you have presented does not persuade the Commission that the information it has relied upon warrants a different decision.   You are correct that the reasons for departure includes the sentence "you committed four bank robberies within 14 months of your release" and that you did not rob banks.   However, you did commit four robberies within 14 months of your release (robbed 3 FedEx Kinko stores and Blockbuster store), and the Commission's regulations do not distinguish between bank robbery and other types of robbery.   In short, while the word "bank" should not have been included in the statement of reasons, the reasons focus on your repetitive history of committing robberies, some armed, and the fact that you committed a number of robberies within the first 14 months of your release on parole, and these factors are correct.
>
> Your institutional behavior and achievements have

> been considered by the Commission but are not
> deemed sufficient to warrant a more lenient
> decision.

See Resp't Mem. at Ex. K; ECF No. 14.

Review of the NAB's decisions confirms that petitioner suffered no prejudice as a result

of the Commission erroneously referring to petitioner's prior robberies as bank robberies.

Accordingly, this claim must also be dismissed.

3) Claim 1(C) Double Counting:

In his third claim, petitioner argues that the Commission engaged in impermissible

double counting when it used the four robberies petitioner was charged with while out on parole

to both determine his salient factor score and severity rating, and exceed the guidelines.

Because it is not double counting to consider the nature, chronology, or similarity of prior

convictions when departing from the guidelines, petitioner's claim must be dismissed.

The guidelines applicable to D. C. Code offenders like petitioner are codified at 28 C.F.R.

§ 2.80.   Under those provisions, each inmate is assigned a "salient factor score," which is used

in determining his suitability for parole and risk of recidivism. Id. at § 2.80 (c).   The inmate's

salient factor score is combined with other factors, including current or past instances of

violence, to yield a "base point score," from which the Commission may calculate the inmate's

"total guideline range."   Id. at § 2.80 (f), (h), (m).   The total guideline range reflects the amount

of time an inmate would be expected to serve until, through positive program achievement, he is

found to be suitable for parole under the successive rehearings system.

However, notwithstanding an inmate's total guideline range, the Commission within its

discretion may depart from the guidelines "for good cause" in "unusual circumstances."   Page v.

Pearson, 261 F. Supp. 2d 528, 532 (E.D. Va. 2003).   These circumstances include "case-specific

factors that are not fully taken into account in the guidelines, and that are relevant to the grant or

denial of parole," such as an unusually persistent history of criminally-related substance abuse,

an unusually extensive prior record, or a prior record of extensive violence.   Id.   As discussed in

the previous sections, a decision by the Commission to depart from the guidelines is subject to

judicial review only if the Commission has "disregarded its procedures, acted beyond its legal

authority, or violated the Constitution." Id.

Double counting occurs when "the same conviction is used to justify going outside the

guidelines as was used in determining the severity rating under the guidelines.   Trice v. Rielly,

No. 3:06cv078, 2006 WL 5644844, at * 5 (E.D. Va. Nov. 13, 2006) (citing Maddox v. U.S.

Parole Comm'n, 821 F.2d 997, 1001 (5th Cir. 1987) and Allen v. Hadden, 738 F.2d 1102, 1105

(10th Cir. 1984)).   However, the "nature and chronology of an offense," Lyons v. U.S. Parole

Comm'n, No. 3:08cv342, 2009 WL 21158 at * 5 (E.D. Va. Jan 28. 2009) (citing LaPlaca v.

Clarke, 664 F. Supp. 991, 992 (E.D. Va. 1997), and the "similarity of . . . offenses as well as the

proximity of the current offense to the prior offenses," Bialkin v. Baer, 719 F.2d 590, 594 (2d

Cir. 1983), may be taken into account to justify a decision above the guidelines even though the

offense was also counted in a determination of the salient factor score.   See, e.g., id.; Harris v.

Martin, 792 F.2d 52, 55 (3d Cir. 1986) (not double counting to consider amount of heroin

petitioner possessed or his managerial role in its distribution even though possession with intent

to distribute heroin conviction was used to determine salient factor score); Lyons, 2009 WL

21158 at * 5 (finding that Commission did not double count by departing upward from the

guidelines and denying parole based on petitioner's premeditation in firing a shot in victim's

12

direction without provocation); <u>Muhammad v. Mendez</u>, 200 F. Supp. 2d 466, 473 (M. D. Penn. Apr. 15, 2002) ("It is equally well-settled that the Commission can use the <u>nature</u> of a prisoner's conviction as a basis for exceeding the guidelines, even though those same convictions were also used in his sentence computation pursuant to the guidelines.").

In this case, the Commission did not double count petitioner's prior offenses. While it is correct that petitioner's prior robbery convictions were factored into his salient factor score and also used as a reason for departing from the guidelines, the Commission looked to the nature, similarity, and chronology of his prior offenses as justification for its departure. Specifically, the Commission considered the nature and similarity of the convictions, finding that all were robberies. Additionally, the Commission looked at the chronology of his past offenses, giving particular weight to "the proximity of the current offense[s] to the prior offenses," <u>Bialkin</u>, 719F.2d at 594, by noting that petitioner committed four robberies within fourteen months of being release on parole. Therefore, the Commission's decision to depart from the guidelines given the "unusual circumstances" presented by petitioner's past offenses was justified, did not amount to double counting, and did not exceed its legal authority or violate the Constitution. <u>See</u> <u>Page v. Pearson</u>, 261 F. Supp. 2d 528, 532 (E.D. Va. 2003). Thus, this decision is beyond the scope of judicial review and this claim must also be dismissed.

4) <u>Claim1(D): Failure to Award Petitioner Full Allotted Total of 1800 Statutory Good Time Days</u>

Petitioner's next argues that he is entitled to 1,800 days of good time credits for the service of his parole violator term. Petitioner alleges that the Commission's failure to award him this good time credit violates due process. However, this claim must fail because petitioner

13

has failed to exhaust his administrative remedies.

In the context of federal habeas petitions challenging sentence computations, parole determinations, or good time credits calculations, courts have required petitioners first to exhaust their administrative remedies.   See United States v. Wilson, 503 U.S. 329, 335-36 (1992) (holding that Congressional changes to 18 U.S.C. § 3568 did not divest the Federal Bureau of Prisons ("BOP") of the authority to compute federal prisoners' sentences and noting that federal prisoners may seek judicial review of these computations after exhaustion of their administrative remedies); United States v. Bayless, 940 F.2d 300, 304-305 (8th Cir. 1991) (refusing to reach petitioner's challenge to computation of his sentence because petitioner had failed to exhaust his administrative remedies with the BOP); United States v. Lucas, 898 F.2d 1554, 1555-56 (11th Cir. 1990) (holding that a dissatisfied prisoner may only avail himself of judicial review after an adverse administrative decision by the BOP regarding his sentence calculation); Greene v. Meese, 875 F.2d 639, 641 (7th Cir. 1989) ("[W]e think the rule of complete exhaustion should apply to federal-prisoner cases."); United States v. Woods, 888 F.2d 653, 654 (10th Cir. 1989) (concluding that because the BOP has the initial discretion to credit a prison term with time spent in custody before commencement of the sentence, a defendant must exhaust his administrative remedies before seeking judicial review); see also Cruz v. Clark, 684 F. Supp. 1335, 1337 (E.D. Va. 1988) ("Judicial review of a claim challenging a Parole Commission decision is available under 28 U.S.C. § 2241 after exhaustion of administrative remedies.").[5]   If an inmate

---

[5] Although the Fourth Circuit has yet to provide binding authority addressing this issue, it has required exhaustion in the following unpublished opinions: Crosson v. South Carolina, No. 93-6720, 1994 WL 12032, at *1 (4th Cir. Jan. 20, 1994) (holding that a petitioner "must exhaust administrative remedies before bringing a § 2241 action" challenging denial of parole); United States v. Bailey, No. 92-5592, 1991 WL 359485, at *1 (4th Cir. Sept. 16, 1993) (noting that the

procedurally defaults on his federal administrative remedies, the exhaustion requirement may only be excused upon a showing of cause and prejudice.   Carmona v. United States Bureau of Prisons, 243 F.3d 629, 634-35 (2d Cir. 2001), cited in McClung v. Shearin, 90 F. App'x 444, 445-46 (4th Cir. 2004).

Petitioner must exhaust his claim through the Administrative Remedy Program, which the BOP established to address inmate grievances.   See 28 C.F.R. §§ 542.10-542.19.   This program requires an inmate to resolve his issue informally before submitting a Request for Administrative Remedy with a member of his Unit Team.   See 28 C.F.R. § 542.13.   If the inmate is unable to resolve his issue informally, he may submit a formal written Administrative Remedy Request to the Warden on a BP-9 form.   See 28 C.F.R. § 542.14.   If the inmate is dissatisfied with the Warden's response, he may appeal the decision to the Regional Director by submitting a BP-10 form.   See 28 C.F.R. § 542.15.   Finally, in the event that the inmate is dissatisfied with the Regional Director's response, the inmate may file a BP-11 appeal with the General Counsel in Washington, D.C.   Id.   An appeal to the General Counsel is the final administrative appeal required before an inmate may file suit in district court.   Id.

In this case, petitioner argues he has exhausted his administrative remedies because he "attempted to resolve the matter through inmate requests to staff at the Designation and Sentence Computation Center."   Pet's Resp. at 13.   Furthermore, petitioner alleges that he "has sent

---

challenged sentence computation was properly under the BOP's authority, and concluding that "[o]nly after prisoners have exhausted the administrative remedies available to them through the [BOP] can they seek judicial review"); Miller v. Clark, No. 91-7317, 1991 WL 48031, at *1 (4th Cir Mar. 16, 1992) (noting that while "[f]ederal prisoners who wish to challenge the length of their confinement must first exhaust administrative remedies[,]" a dismissal for failure to exhaust should be without prejudice).

letters and requests attempting to resolve this issue." Id. As evidence, petitioner submits a

letter addressed to the Designation and Sentence Computation Center and its response, which

clearly informs petitioner "if you have any further concerns regarding your sentence computation,

you may submit a request for administrative remedy through institution staff." Id. at Ex. 5; ECF

No. 16. Petitioner also apparently filed a Freedom of Information Act ("FOIA") Request with

the District of the Columbia Department of Corrections regarding his sentence, which he also

offers as evidence of exhaustion. Id. However, neither the letter to the Designation and

Sentence Computation Center nor the FOIA request are sufficient to comply with the intricate

administrative exhaustion scheme that petitioners must complete before submitting a § 2241

petition. Therefore, this claim must be dismissed without prejudice to petitioner's ability to

raise it once he has exhausted all administrative remedies.

B. Claim 2: The Commission's Reasons for Exceeding the Reparole Guidelines Violates the Commission's Regulations

Petitioner's next claim, which is mostly a repackaging of his first five claims, is that the

Commission violated its own regulations by providing insufficient reasons for deciding to exceed

the reparole guidelines. In support of this argument, petitioner invokes § 2.20-05 of the United

States Parole Commission Rules and Procedure Manual, which provides examples of situations

in which decisions outside the guidelines are appropriate. Specifically, petitioner argues that his

one prior violation of parole was insufficient to depart from the guidelines because it did not

establish unusually repetitive failure while on parole supervision. See Pet. at 16.

Although the Commission's decisions are reviewable if the Commission departs from its

own regulations, Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981), petitioner misapprehends

the legal authority of the Manual he relies on for his argument.   First, the Manual explicitly states: "[t]he notes procedures, and appendices do not confer legal rights and are not intended for reliance by private persons."   Respt's Mem. at Ex. M; ECF No. 14.   Additionally, § 2.20-05 explains the examples included in the Manual are not exclusive and do "not mean that these are the only situations in which a decision outside the guidelines may be considered."   Id. Furthermore, as discussed at length in connection with petitioner's other claims, the Commission may depart from its reparole guidelines when circumstances warrant.   See 28 C.F.R. § 2.21(d). If the Commission chooses to depart from the guidelines the "notice of action shall include the reasons for such departure."   28 C.F.R.§ 2.74(b).

In this case, the Commission complied with its own regulations when it reached a decision outside of the guidelines.   After taking into account the chronology, nature, and proximity of petitioner's past convictions the Commission determined that a sentence above the guidelines was warranted.   See id.   Additionally, the Commission included the reasons for this departure in the Notice of Action, stating:

> [A] decision above the guidelines is warranted
> because you are a more serious risk than indicated
> by the guidelines in that based on your history of
> committing robbery while under community
> supervision.

Respt's Mem. at Ex. J; ECF No. 14.   The Commission also listed all of the petitioner's prior robberies, emphasizing the fact that petitioner committed four within fourteen months of his prior release.   The Commission concluded "[y]our [sic] have continued to commit robberies while on parole supervision and the Commission believes that you are a high risk to resume this criminal behavior when you are released again to the community."   Id.   Accordingly, because

the Commission did not violate its own regulations in exceeding the guidelines, this claim must
also be dismissed from this petition.

C.   Claim 3: Ex Post Facto Violation

In petitioner's final claim he argues that the Commission violated the Ex Post Facto
clause in his case because the application of the Commission's guidelines will result in him
serving more time in prison than he would have served if the guidelines used by the D.C. Board
of Parole at the time he committed his offense were applied.   Specifically, petitioner alleges the
Commission violated the Ex Post Facto clause when 1) it applied its own guidelines, the "2000
Guidelines," at his parole revocation hearing instead of the 1987 D.C. Board of Parole
Guidelines,[6] see Pet. Resp. at 14, (2) it waited until the conclusion of petitioner's intervening
sentence to execute the parole violator warrant, see Pet. at 20; ECF No. 1, and (3) when it
examined his post-incarceration behavior under the 2000 Guidelines, which focus on punitive
factors, rather than that 1987 D.C. Regulations, which look more to rehabilitative factors.

The Ex Post Facto clause prohibits laws that "retroactively alter the definition of crimes
or increase the punishment for criminal acts."   Collins v. Youngblood, 497 U.S. 37, 43 (1990).
The central concern of the Ex Post Facto Clause is fair notice to a defendant that the punishment
for a crime has increased from what it was when the crime is committed.   Weaver v. Graham,
450 U.S. 24, 28 (1981).   In determining whether a retroactive change in laws governing parole

---

[6] The Commission, upon assuming jurisdiction over the D.C. Code offenders through the
National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No.
105-33, § 11231(a)(1), 111 Stat. 712, 745, D.C. Code § 24-131(a), adopted an amended version
of the existing parole rules and guidelines of the D.C. Board in 1998.  These guidelines were
codified at 28 C.F.R. § 2.80 et seq and are referred to in the remainder of this Memorandum
Opinion as the "2000 guidelines."   The National Capitalization and Self-Government
Improvement Act will be discussed in detail below.

decisions violates the Ex Post Facto prohibition, the issue is whether the application of the law "creates a significant risk of prolonging [the inmate's] incarceration." Garner v. Jones, 529 U.S. 244, 251 (1995).

Petitioner's ex post facto claims arise from the National Capital Revitalization and Self-Government Act of 1997, Pub. L. No., 105-33, § 11231(a)(1), 111 Stat. 712, 745, D.C. Code § 24-131(a) (the "Act"). Pursuant to that Act, the Commission assumed jurisdiction over D.C. Code offenders on August 5, 1998. The Act required the Commission to follow the District of Columbia's existing parole laws and rules, but also gave it the authority to "amend and supplement" those rules and their implementing guidelines. See D.C. Code § 24-12319(a). The Commission's amended version of the D.C. Board's was published in 1998, and is codified at 28 C.F.R. § 2.80 et seq.

The D.C. Board's preexisting parole guidelines were adopted in 1987 pursuant to its authority "to establish rules and regulations for its procedure." Ellis v. Dist. of Columbia, 84 F.3d 1413, 1415 (D.C. Cir. 1996). Those rules were repealed on October 27, 2000. See District of Columbia Register Vol. 47, No. 43 (Friday, Oct. 27, 2000) at 8669. Since the D.C. Board's parole guidelines were part of its regulations, the Act confers authority on the Commission to revise those guidelines as it gives the Commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons...." See D.C. Code § 24-131(a)(1)(2001). Petitioner now argues that the Commission's application of the 2000 Guidelines, adopted on October 27, 2000, rather than those adopted in 1987 violates the Ex Post Facto Clause because he is substantially likely to spend more time incarcerated.

1) Claim 3(A):   Application of the 2000 Guidelines during the Parole Revocation
   Hearing

Petitioner's first Ex Post Facto claim, which challenges the use of the 2000 Guidelines

instead of the D.C. Board of Parole guidelines at his parole revocation hearing fails for three

reasons.  First, the 2000 Guidelines are not "laws" to which the Ex Post Facto Clause applies,

rather they are merely guides for the Commission's exercise of discretion.  See United States v.

Booker, 543 U.S. 220 (2004) (guidelines which are advisory in nature would not be subject to the

Ex Post Facto Clause); Garner, 529 U.S. at 252 (finding that changes in parole procedures do not

necessarily implicate the Ex Post Facto Clause); Farmer v. U.S. Parole Comm., 588 F.2d 54,

55-56 (4th Cir. 1978) (where parole guidelines were changed after sentencing but federal parole

statute left suitability for parole to Commission's discretion, no ex post facto violation occurred);

Dufresne v. Baer, 744 F.2d 1543 (11th Cir. 1984), cert.denied, 474 U.S. 817 (1985)

(Commission's guidelines do not have the force of law and so cannot violate the Ex Post Facto

Clause).

Second, even if the 2000 Guidelines did carry the force of law, they were not retroactively

applied to petitioner.  "To fall within ex post facto prohibition, a law must be retrospective, that

is, it must apply to events occurring before its enactment and it must disadvantage the offender

affected by it."  Lynce v. Mathis, 519 U.S. 443, 441 (1997).  "The critical question is whether

the law changes the legal consequences of acts completed before its effective date."

Weaver v. Graham, 450 U.S. 24, 31 (1981).  In this case, the 2000 Guidelines were not applied

to events occurring before their effective date because the offenses leading to the revocation of

petitioner's parole occurred in 2004.  See Resp't Mem. at Ex. G.; ECF No. 14; see also Trice v.

20

Reilly, No. 5:08CV31, 2009 WL 514112 *4 (N.D.W. Va. Mar. 2, 2009) (finding no ex post facto

violation where 2000 Guidelines applied to conduct petitioner engaged in 2004, which

subsequently resulted in the revocation of his parole).

Third, assuming arguendo that the guidelines were "law" that applied retroactively to

petitioner, he has not established that the application of the Commission's 2000 Guidelines has

created a significant risk of increased incarceration as compared to the D.C. Board's 1987

Reparole Guidelines.   See Garner, 529 U.S. at 255.   The Commission's 2000 Guidelines consist

of individualized factors such as the offender's prior record of parole supervision, his conduct

while on parole, and his institutional conduct, which are the same factors that the D.C. Board

would have taken into account in determining whether a to grant or deny parole to a potential

reparolee.   Additionally, similar to the Commission's guidelines, the D.C. Board's 1987

guidelines permitted the Board to depart from the guidelines "in unusual circumstances."   Resp't

Mem. at Ex. N; 28 D.C.M.R.§ 204.22; see, e.g., McRae v. Hyman, 67 A.2d 1356 (D.C. 1995)

(upholding D.C. Board's departure from the guidelines for repeat violent offender).   Therefore,

petitioner can only speculate as to whether or not the D.C. Board would have exceeded its

guidelines.   Such speculation, as a matter of law is insufficient to sustain an ex post facto claim.

See California Dep't Corrections v. Morales, 514 U.S. 499, 509 (1995) (demonstrating a

"speculative and attenuated possibility . . . of increasing the measure of punishment" will not

support an ex post facto claim.).

    2)   Claim 3(B) Execution of the Parole Violator Warrant at the Conclusion of
        Petitioner's Intervening Sentence

Petitioner's next ex post facto claim is that the Commission's decision to wait until the

conclusion of petitioner's intervening sentence to execute the April 29, 2005 parole violator

warrant violated the Ex Post Facto Clause.   Specifically, petitioner argues that under the D.C.

Parole Board procedures, the warrant would have been executed before he completed the

intervening sentence and he would have served a shorter period of time in prison.

In the case of a parole violator, the execution of the parole warrant commences the

running of the balance of the original sentence, which is tolled by the issuance of the warrant.

See 28 C.F.R. § 2.100(d)(1).   The Commission's policy is that the balance of the original

sentence will only start to run after the offender has completed the intervening sentence.   Id.

Thus, the decision to lodge a parole violator warrant as a detainer while the offender completes

that sentence is well within the Commission's authority.   See Moody v. Daggett, 429 U.S. 78, 89

(1976) (explaining that the Commission has no duty to provide a parole violator with a

revocation hearing until he is taken into custody as a parole violator by the execution of a

warrant); Gaddy v. Michael, 519 F.2d 669, 674 (4th Cir. 1975) cert denied 429 U.S. 1990 (1976)

(finding that execution of a parole violator warrant "may be held in abeyance for the service of an

intervening sentence"); Mauney v. Garrison, 558 F.2d 214, 215 (4th Cir. 1977); Larson v.

McKenzie, 554 F.2d 131, 132 (4th Cir. 1977).

Similar to the Commission, the D.C. Board also had broad discretion to issue a parole

violator warrant and determine its disposition. See Resp't Mem. at Ex. P; DCMR §§

218.1-218.2.   Although the D.C. Board was required to review the disposition of each warrant

every six months, it was not required to execute the warrant at that time.   See id.; DCMR §

218.3.   Thus, petitioner's claim that he would have served less time under the D.C. regulations is

nothing more than mere speculation, which is insufficient as a matter of law to sustain an ex post

facto claim.  See California Dep't Corrections v. Morales, 514 U.S. 499, 509 (1995).

Therefore, this claim must be dismissed.

3) Claim 3(B) Examination of Petitioner's Post-Incarceration Behavior under the 2000 Guidelines

In petitioner's final claim he argues that the Commission violated the Ex Post Facto Clause when it examined his post-incarceration behavior under the 2000 Guidelines, which focuses on punitive factors, rather than the 1987 D.C. regulations, which look more to rehabilitative factors.  However, the D.C. parole laws did not require that an inmate's participation in institutional programs be a determinative factor in parole decisions.  See D.C. Code § 24-404(a); Bogan v. District of Columbia Board of Parole, 749 A.2d 127, 129 (D.C. 2000) (upholding D.C. Board's denial of parole even though prisoner completed all of the programs that the Board had required him to complete); Duckett v. U.S. Parole Commission, 795 F. Supp. 133, 135 (M.D. Pa. 1992) (citing institutional programming as one factor to determine parole).  Instead, in deciding whether to grant parole to a prisoner, the D.C. Board was required to use its discretion to determine "whether the prisoner is likely to be a responsible citizen if he is returned to the community and whether the release on parole is consistent with public safety." White v. Hyman, 647 A.2d 1175, 1179 (D.C. 1994).  Pursuant to the National Capital Revitalization Act, that discretion is now vested with the United States Parole Commission.

The D.C. Board, like the Parole Commission, was instructed that participation in institutional programming was not to be a determinative factor in parole decisions. Additionally, the D.C. Board, like the Parole Commission, was granted broad discretion to decide whether to grant parole to a prisoner.  Accordingly, petitioner's argument that examining

23

his post-incarceration behavior under the 2000 Guidelines instead of the D.C. regulations resulted in additional incarceration is merely speculation and this claim must also be dismissed.

## IV. Conclusion

For the above state reasons, respondent's Motion for Summary Judgment will be granted and summary final judgment will be entered in their favor.   An appropriate Order and Judgment shall issue.

Entered this _____ day of _____ 2012.

/s/
James C. Cacheris
United States District Judge

Alexandria, Virginia